UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADRIAN KEVIN GRAY,

                    Petitioner,

vs.                                    Case No. 3:10-cv-512-J-37JRK

SECRETARY, DOC, et al.,

                    Respondents.

_____

**ORDER**

**A. Status**

Petitioner Adrian Kevin Gray, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on June 2, 2010, pursuant to the mailbox rule.[1]  He is proceeding on Petitioner's First Amended Petition (Amended Petition) (Doc. #20), filed on January 26, 2011 pursuant to the mailbox rule.  He states that he is challenging a 2005 state court (Nassau County, Florida) judgment of conviction for robbery,

_____

[1] The Petition (Doc. #1) was filed with the Clerk on June 16, 2010; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (June 2, 2010).  See Houston v. Lack, 487 U.S. 266, 275-76 (1988).  The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).  See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

kidnapping, and battery, and he is serving a life sentence without parole.  Amended Petition at 1.  Upon review, however, Petitioner is no longer serving a life sentence for kidnapping.  The conviction for kidnapping was reversed and remanded with directions for the trial court to impose the lesser-included offense of false imprisonment.  Thus, the Court will liberally construe the *pro se* Amended Petition as raising a challenge to the conviction for false imprisonment, for which Petitioner is serving a prison sentence of five-years; for robbery, for which Petitioner is serving a prison sentence of twenty-five years;[2] and for battery, for which Petitioner received a sentence of time-served.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus.  Specifically, 28 U.S.C. § 2244 provides:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant

---

[2] See http://www.dc.state.fl.us/ActiveInmates/detail.

was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). See Respondents' Answer to Amended Petition for Writ of Habeas Corpus (Response) (Doc. #29).[3]  In support of their contentions,

---

[3] Respondents contend that Petitioner is not in custody on the false imprisonment count and that count is not open to collateral attack by federal habeas corpus.  Response at 6-7.  Respondents have not provided the Court with the resentencing document, and the Corrections Offender Network Inmate Population Information Detail shows Petitioner's current prison sentence history includes the offenses of false imprisonment (a prison sentence of five years) and robbery (a prison sentence of twenty-five years).  See http://www.dc.state.fl.us/ActiveInmates/detail.  In an abundance of caution, the Court will assume that Petitioner is in custody on the false imprisonment count for the limited purpose of this opinion. Having been sentenced to time-served on the third count, battery, Petitioner is not "in custody" on that count and it is not subject

- 3 -

they have submitted exhibits.[4]  <u>See</u> Exhibits to Answer to Amended Petition for Writ of Habeas Corpus (Doc. #30).  Petitioner was given admonitions and a time frame to respond to the request to dismiss the Petition contained within the Response.  <u>See</u> Court's Order (Doc. #8).  Petitioner filed his reply (Reply) (Doc. #41), entitled "Equitable Tolling," on March 20, 2012.

## B. One-Year Limitations Period

The following procedural history is relevant to the one-year limitations issue.  After a jury trial, Petitioner was convicted of robbery while wearing a mask, kidnapping, and battery. Ex. 15.  He was sentenced to twenty-five years on Count I (the robbery while wearing a mask count), to life in prison without parole as a prison release reoffender on Count II (the kidnapping count), and to time served (479 days) on Count III (the battery count).  <u>Id</u>.  The judgment and sentence was entered on June 16, 2005.  <u>Id</u>. Petitioner appealed.  Ex. 16; Ex. 17; Ex. 20; Ex. 21.  The First District Court of Appeal, in its opinion of September 13, 2006, affirmed the convictions for robbery and battery but reversed the conviction for kidnapping and remanded the case to the trial court for the trial court to impose the lesser-included offense of false

to collateral attack.  <u>See</u> Response at 7.

[4] The Court will hereinafter refer to Respondents' exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Exhibit.  Otherwise, the page number on the particular document will be referenced.

imprisonment and to resentence Petitioner.  Ex. 22; <u>Gray v. State</u>, 939 So.2d 1095 (Fla. 1st DCA 2006) (per curiam).  The mandate issued on November 8, 2006.  Ex. 27.  The state sought discretionary review, Ex. 25, but the Supreme Court of Florida, on November 16, 2006, declined to exercise jurisdiction and denied the petition.  Ex. 28.

The Respondents state that on February 22, 2007, the judgment for the lesser-included offense of false imprisonment on Count II was entered and a sentence of five years incarceration as a prison release reoffender was imposed to be served concurrently with Counts I and III.[5]  Response at 4.  Apparently, Petitioner did not seek an appeal.  Therefore, his conviction became final on Monday, March 26, 2007, when the time to appeal expired.  Response at 8.

The one-year period of limitations started running on March 27, 2007, the day after Petitioner's conviction became final.  It ran for 231 days, until Petitioner filed a Rule 3.850 motion on November 13, 2007, pursuant to the mailbox rule.  Ex. 29.  The rule 3.850 motion was denied, Ex. 30, and the mandate issued on November 18, 2008.  Ex. 36.  The one-year statute of limitations expired on Wednesday, April 1, 2009.  Petitioner did not have any applications for post conviction relief pending in the state court system after

---

[5] Respondents reference Ex. 28 as the exhibit which includes the judgment and sentence for the lesser-included offense of false imprisonment; however, upon review, the judgment and sentence is not included in Ex. 28.

the mandate issued on November 18, 2008 through the expiration of the one-year AEDPA limitations period.

Indeed, Petitioner did not file a state Petition for Writ of Habeas Corpus until August 6, 2009, pursuant to the mailbox rule, long after the one-year limitations period expired. Ex. 37. His other state post conviction motions were filed on September 18, 2009, Ex. 39, and September 21, 2010. Ex. 42. These motions did not toll the federal one-year limitations period because it had already expired on April 1, 2009. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam), cert. denied, 531 U.S. 991 (2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Based on the foregoing, the Petition, filed June 2, 2010, and the Amended Petition, filed January 26, 2011, are untimely filed and are due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted. Petitioner asserts that he is entitled to equitable tolling because he has a mental infirmity. Reply at 1. He states that he is mentally retarded and he does not have the mental capacity to exercise due diligence on his own. Id. "It has only been other inmates that have prodded the Petitioner to file post-conviction

motions that have had any influence on the Petitioner's diligence to this point." Id. Petitioner claims he requested a certified inmate law clerk be assigned to his case, and on April 9, 2009, he was assigned an inmate law clerk. This inmate law clerk returned Petitioner's documents to him on May 20, 2009, without conducting any research or preparation. A petition was finally filed in the wrong court on September 18, 2009. Id. Petitioner states that he has to rely on others to assist him in pursuing his post conviction remedies.

In deciding whether the statute of limitations bars this action, the Court should consider whether Petitioner Gray has claimed and demonstrated that a state impediment prevented him from timely filing or that equitable tolling "excepts the one-year filing deadline." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007). Here, Petitioner has claimed that he is entitled to equitable tolling due to a mental infirmity. The question before the Court is whether Petitioner has demonstrated that he was mentally incapable of filing a federal habeas corpus petition in a timely manner during the pertinent time period. Upon review, the pertinent time periods are that period from March 27, 2007, the day after his conviction became final, through November 13, 2007, when he filed his Rule 3.850 motion, and the period from November 19, 2008 (the day after the mandate issued), until April 1, 2009, when the one-year period expired.

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted).   The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted.   Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (per curiam) (citations omitted).   Here, Petitioner simply has not met the burden of showing that equitable tolling is warranted.

The Eleventh Circuit has held that an allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling.   Lawrence v. Florida, 421 F.3d at 1226-27; see Fox v. McNeil, 373 Fed.Appx. 32, 34 (11th Cir. 2010) (per

curiam) (not selected for publication in the Federal Reporter) (finding petitioner had not met his burden to prove that equitable tolling was appropriate where he had "failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"), cert. denied, 131 S.Ct. 1047 (2011); United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (finding the *pro se* defendant's alleged mental disorders did not justify equitable tolling of the one-year limitations period, absent a showing that his condition resulted in "profound mental incapacity").

Some historical background will be provided to give context to Petitioner's claim of mental infirmity.  On January 19, 2005, Petitioner's defense counsel filed a Motion for Mental Examination of Defendant, Motion for Trial Continuance, or in the Alternative, Motion to Withdraw as Attorney of Record.  Ex. 7.  Counsel asserted that Petitioner may be suffering from a mental infirmity.  Id. at 87.  Additionally, counsel noted that Petitioner's mother, after jury selection, told counsel that Petitioner receives social security due to a mental disorder.  Id. at 87-88.  When asked about the disorder, Petitioner confirmed that he received social security income and suffers from blackouts.  Id. at 88.  Defense counsel stated he was concerned that his client was incompetent to proceed to trial.  Id. at 88.  Counsel requested that the trial court issue an order directing "mental health expert(s)" be appointed to

examine Petitioner regarding his competency to proceed to trial. Id. at 89.

Dr. Ernest C. Miller, M.D., was appointed to conduct a psychological evaluation in order to determine Petitioner's competency to proceed to trial and to assist his attorney in making adequately reasoned decisions.   Ex. 8 at 90.   Dr. Miller was directed to report to defense counsel under the lawyer-client privilege.   Id. at 91.   Although the resulting evaluation is not contained in the record before the Court, defense counsel, in a bar grievance response, explained:

> In January, Mr. Gary Baker, Esquire, and I attended jury selection with Mr. Gray.   Mr. Baker picked the jury and we were headed to trial.   Between the jury selection and the trial, I consulted with Mr. Gray regarding his version of what happened the night of his arrest.   Mr. Gray proceeded to tell me another version of what happened.   Without disclosing the details herein, his story greatly conflicted with what he had explained in earlier interviews.   I confronted him with his conflicting stories and he denied ever being dishonest or contradictory.   This denial caused me great concern for his mental well-being.   It also prevented the defense from explaining Mr. Gray's version to the jury during opening statements because we were uncertain what his version would actually be when he testified.   Taken together, Mr. Baker and I thought it prudent to file a Motion for Mental Examination along with a Motion for Trial Continuance, a copy of which is enclosed.   Also find the Order Appointing Psychiatric Expert enclosed for your review. **Though the expert opined that Mr. Gray was paranoid, he determined him to be competent to proceed to trial.**

Ex. 29 at 47-48, Gary Baker's June 6, 2005 Letter to the Florida
Bar (emphasis added).  In its order denying grounds one and two of
the Rule 3.850 motion, the trial court found "Defendant was
examined at his counsel's request and by an expert chosen by him
who found him competent to proceed."  Ex. 30 at 52.

The record also contains a letter addressed to the trial judge
from Petitioner's mother, Sonia Gray, stating that her son was
"labeled as mildly retarded" at about six years of age.  Ex. 29 at
137, Letter of Sonia Gray.  She explained that Petitioner attended
special and vocational schools and learned landscaping.  _Id_.  She
said, "after realizing he had the ability to learn, [he] signed
himself up for PTC Career institute in Washington D.C. where he
obtained a certificate in Nursing Assistance."  _Id_.  She mentioned
that he had turned to drugs and a drug rehabilitation program would
benefit him.  _Id_.

At trial, Petitioner attested that he worked at the Hammerhead
and the Beech Street Grill in February 2004.  Ex. 9 at 380.  He
worked the nine to four shift.  _Id_. at 381.  Before that, he worked
at the shipyards in pressure concrete.  _Id_. at 380-81.  When asked
about his daily schedule, he attested he had to be at work at nine
o'clock, so he leaves his house at about 8:30, and he arrives at
work about five minutes until the hour.  _Id_. at 384.  He confirmed
that he got off of work at four o'clock and arrived home at around
4:30.  _Id_.

- 11 -

    With this background,[6] the Court looks to the relevant time
periods at issue:  the period from March 27, 2007, the day after
his conviction became final, through November 13, 2007, when he
filed his Rule 3.850 motion, and  the period from November 19, 2008
(the day after the mandate issued), until April 1, 2009, when the
one-year period expired.  Petitioner has not made any showing that
his mental status changed between the time he was evaluated for
competency at trial and the relevant time periods under AEDPA.
There is no evidence of a mental condition or infirmity other than
those stated in the trial court record (mild mental retardation and
the finding that Petitioner is competent but paranoid).  Petitioner
has failed to show that there has been any material change in his
mental condition during the one-year limitations period which
caused the untimely filing.  Petitioner's conclusory allegation
that his mild mental retardation caused his untimeliness in filing
a federal petition is insufficient to satisfy the requirement that
Petitioner present evidence to create a factual issue as to a
causal connection between any mental impairment and his ability to
file a timely petition.

---

        [6] Petitioner may suffer from mild mental retardation, but, it
was determined by a psychiatric expert that he was paranoid but
competent to proceed to trial.  Petitioner provided detailed
testimony at trial, responding appropriately to questions asked of
him.  He attested he was employed and working.  His mother wrote
the trial judge a letter stating that her son attended special and
vocational schools and obtained a certificate in Nursing Assistance
through the PTC Career Institution in Washington D.C.

Indeed, after an extensive review of the record, this Court opines that the record refutes Petitioner's assertion of mental incapacity during the relevant AEDPA one-year time period. The record establishes that any mental impairment was not sufficient to render him mentally incapacitated and would not have affected his ability to timely file the petition in this Court. Indeed, Petitioner has failed to show profound mental incapacity during the relevant time periods, and the record demonstrates that Petitioner was mentally capable of filing a timely petition in this Court.

There is no evidence in the record to support Petitioner's claim that his mental condition or infirmity during the one-year limitations period impaired his ability to make a timely application. Simply claiming one has been diagnosed as mildly retarded does not establish entitlement to equitable tolling. See Whiting v. McNeil, No. 4:08cv301-RH/WCS, 2009 WL 2460753, at *5 (N.D. Fla. Aug. 7, 2009) (not reported in F.Supp.2d) (claims of suffering mental impairments for life does not entitle a federal petitioner to equitable tolling). Indeed, "mental impairment is not *per se* a reason to toll a statute of limitations." Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (citation omitted). Petitioner must demonstrate that there is a causal connection between his delay and his intellectual disability. See Myers v. Allen, 420 Fed. Appx. 924, 927 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal

- 13 -

Reporter) (noting that circumstances may "yield a very low bar for
what level of diligence is reasonable," but the petitioner bears
the burden of demonstrating diligence within his ability), cert.
denied, 132 S.Ct. 2771 (2012).

Here, Petitioner has not demonstrated diligence within his
ability.  See Response at 10-13.  Petitioner calculated that the
one-year limitations period would expire on May 10, 2009.  Reply,
Inmate Grievance Dated November 6, 2009 and Response Dated November
20, 2009.  He requested and was then appointed an inmate law clerk
on April 9, 2009, the date the one-year limitations period actually
expired.  Id.  Apparently his appointed inmate law clerk failed to
perform his duties; however, the one-year limitations period had
already expired, thus, the law clerk's actions or inactions did not
play any part in the untimely filing of the federal petitions.  Id.

With respect to the 231 days of the limitations period that
passed between his conviction becoming final and the filing of his
Rule 3.850 motion, Petitioner has failed to demonstrate a causal
connection between the delay and his intellectual disability.  With
regard to the 134 days that passed between the mandate being issued
on November 18, 2008 and the limitations period expiring on April
1, 2009, Petitioner has failed to show a causal connection between
any mental deficiency and his ability to file a timely federal
petition.  Assuming Petitioner is attempting to assert that he was
unaware that he could proceed in federal court after the state

court issued its mandate, ignorance of the law is insufficient to warrant equitable tolling.  See Johnson v. United States, 544 U.S. 295, 311 (2005) (holding that the Court has "never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").  In sum, Petitioner has failed to show that mild mental retardation prevented him from diligently pursuing his state court remedies.

In conclusion, Petitioner Gray has failed to establish that any mental impairment he suffered during the AEDPA limitations period was sufficient to render him mentally incapable of timely filing a petition.  At most, Petitioner has shown that he suffered from paranoia and mild mental retardation, which condition did not change after the trial.  There is not a mental condition or infirmity during the one-year AEDPA period which has been shown to have impaired his ability to make a timely application.

This Court finds that Petitioner is not entitled to equitable tolling from March 27, 2007, the day after his conviction became final, through November 13, 2007, when he filed his Rule 3.850 motion, and the period from November 19, 2008 (the day after the mandate issued), until April 1, 2009, when the one-year period expired.  The Court is of the opinion that Petitioner has not shown that he is entitled to extraordinary relief.

### C.  Actual Innocence

Petitioner claims actual innocence, asserting he was "racially profiled and picked at random in order for authorities to have someone to accuse of the crime."  Amended Petition, Ground Six: Actual Innocence.  In raising a claim of actual innocence, the following applies:

> "'To successfully plead actual innocence, a petitioner must show that his conviction resulted from 'a constitutional violation.'" Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995)).  The actual innocence claim in Schlup is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Schlup, 513 U.S. at 315, 115 S.Ct. at 861 (quotation marks omitted).

Scarlett v. Sec'y, Dep't of Corr., No. 10-11285, 2010 WL 4948730, at *6 (11th Cir. Dec. 7, 2010) (per curiam) (not selected for publication in the Federal Reporter), cert. denied, 131 S.Ct. 3000 (2011).

Petitioner contends that there is a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him; he asserts actual innocence.  Reply at 5.  He contends: "[i]n this case the accused is guilty of being a black man in the wrong place at the wrong time who lacks the requisite sense to realize he is being accused of something that he did not do and has no knowledge of."  Id.  "AEDPA's limitations period must be read to

- 16 -

include, by implication, an exception for cases in which a petitioner is actually innocent." <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 113 (2nd Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 873 (2000).  To make a showing of actual innocence, Petitioner must show "that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  In assessing the adequacy of a petitioner's showing, the Court stated:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

<u>Id</u>. at 329; <u>see also</u> <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1205 (11th Cir. 2004) (stating that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence") (citations omitted).

This Court finds that Petitioner has not made a showing of actual innocence.  He has not offered any new reliable evidence

that was not available at the time of trial.  See Melson v. Allen,
548 F.3d 993, 1002 (11th Cir. 2008) (stating that petitioner, to
make a sufficient showing of actual innocence, is required to
produce new reliable evidence that was not presented at trial)
(citations and quotations omitted), vacated on other grounds, 130
S.Ct. 3491 (2010).  Petitioner has not produced exculpatory
scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence that was not presented at trial.  See Schlup, 513
U.S. at 324.  Indeed, he has failed to demonstrate that it is more
likely than not that no juror, acting reasonably, would have found
him guilty beyond a reasonable doubt in light of new evidence.

The Court finds Petitioner's allegations of actual innocence
to be insufficient.  This is not an "extraordinary" case under the
Schlup standard.  House v. Bell, 547 U.S. 518, 538 (2006).  Thus,
Petitioner's application for a writ of habeas corpus is barred by
the one-year statute of limitations.

Petitioner has not shown a justifiable reason why the dictates
of the one-year limitations period should not be imposed upon him.
For this reason, this Court will dismiss this case with prejudice
pursuant to 28 U.S.C. § 2244(d).

### D. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner appeals the dismissal of the Amended Petition,
the undersigned opines that a certificate of appealability is not
warranted.  This Court should issue a certificate of appealability

- 18 -

only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

- 19 -

1.    The Amended Petition for Writ of Habeas Corpus (Doc. #20) is **DISMISSED with prejudice pursuant to 28 U.S.C. 2244(d)**.

2.    The Clerk of the Court shall enter judgment dismissing this case with prejudice and shall close this case.

3.    If Petitioner appeals the dismissal of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of December, 2012.

ROY B. DALTON, JR.
United States District Judge

sa 11/30
c:

– 20 –

Adrian Kevin Gray
Ass't Attorney General (Jordan)